UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-24-FDW

| | |
|---|---|
| ROBERT LAMAR MCFADDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| RODNEY BURTON, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Rodney Burton, Calvin Rhodes, Jonathan Mathes, and Ryan Robinson. (Doc. No. 89).

### I. BACKGROUND

#### A. Procedural Background

On January 19, 2017, Plaintiff, a North Carolina inmate currently incarcerated at Marion Correctional Institution in Marion, North Carolina, filed a Complaint against Defendants pursuant to 42 U.S.C. § 1983, alleging that he was subjected to an excessive use of force on October 9, 2016. (Doc. No. 1). In October 2016, Defendant Burton was a correctional sergeant, and Defendants Rhodes, Mathes, and Robinson were correctional officers at Marion. Plaintiff alleges that on October 9, 2016, Defendants used excessive force against him. (Id.). Specifically, Plaintiff claims that he was hit, kicked, slapped with a shield, and slammed into a wall by Defendants. (Id.). Plaintiff has sued Defendants in both their official and individual capacities. (Id.). Plaintiff seeks compensatory damages, punitive damages, and injunctive relief.

1

(Id.).

Defendants filed the pending summary judgment motion on July 30, 2018. (Doc. No. 89). On August 1, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 91). Plaintiff has not responded to the summary judgment motion, and the time to do so has passed.[1] Thus, this matter is ripe for disposition.

### B. Factual Background

#### 1. The Summary Judgment Evidence

##### a. Plaintiff's Allegations

Plaintiff alleges the following in the Complaint in support of his excessive force claim:

> On 10-9-16 between 8:00 p.m. and 10:00 p.m. I was placed in the shower by officers and Sergeant Burton. Sergeant Burton told me Lt. Tate told him I was to be placed on dry cell which means I have T-shirt and a pair of boxers on. I informed Sergeant Burton that I would like to hear Lt. Tate tell me that because he said nothing about me only having my boxers and T-shirt and no pants. Sergeant Burton then stated, "fuck it you can stay in there," and I told him "fuck you" and I called him a "house nigga." He turned around and came to the shower gate and told me he will come in the shower and beat my ass and called me a street punk and a pussy so I then spit in his face and went to the back of the shower. He proceeded to grab his keys like he was going to open the shower and grabbed pepper spray instead and sprayed me while I was in the shower. When he saw that I was not fazed by the spray he reached his arm in the shower and sprayed some more pepper spray. When Lt. Tate came I informed him everything that went on on my part and Sgt. Burton's part. While Lt. Tate was inside the lower level gate of upper E-unit (D-wing) officer Robinson held the shield up against the shower gate and Sgt. Burton is seen harassing and oppressing me still. I attempted to spit again and went to the back of the shower and he grabbed his

---

[1] Because Plaintiff did not file a response to the summary judgment motion, he is deemed to have abandoned his claims. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). Plaintiff did file various documents after the summary judgment motion was filed, but they were stricken for not complying with the Federal Rules of Evidence. In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

can of pepper spray and proceeded to spray me some more. When Lt. Tate walked over I informed him what Sgt. Burton told me--[when] I hit the yard I was going to be somebody's bitch. There was a code blue in progress and Lt. Tate told me I can stay in the shower or I can go to my room or just wait in the shower until he returns to the unit. I informed him that I will wait. Lt. Tate went to receiving to watch the camera. Before he left he notified Sgt. Burton and staff to leave me in the shower. After the code blue was complete Sgt. Burton, Officer Rhodes, Officer Mathes, Officer Robinson proceeded into D-Wing and came to the shower I was placed in and asked me to submit to restraints. Lt. Tate called over the radio to inform staff that I am not to leave or be removed from the shower until he returns to the unit. I was not in handcuffs or any kind of restraints when the officers came into the shower. My head was slammed into the shower wall multiple times. I was hit, kicked, and slapped with the shield. Sgt. Burton then informed staff to lay me on the floor. Officer Rhodes aggressively grabbed my feet and slammed me hard onto the wet floor. Sgt. Burton then informed staff to drag me out of the shower and place me into restraints. Officer Rhodes put leg cuffs around my ankles then Officer Mathes aggressively grabbed my legs and proceeded to drag me out of the shower which can be clearly seen on Upper E-unit D-wing camera. There was not a staff member present who was supposed to record what was taken place. Lt. Tate, Sgt. Burton, nor Officers Rhodes, Mathes and Robinson report this incident to unit management or higher command. Prison officials acted intentionally, with a malicious state of mind when they committed this act. I suffered from pain in my neck and upper back. Nurse Roper was supposed to give me some muscle relaxer cream and some non-aspirin on 10-9-16 when I reported that I was having severe pain in my neck and area and back area. On 10-11-16 I declared a medical emergency that I was in severe pain and was hurting. Between 6:20 p.m. and 6:50 p.m. Sergeant Tripplet spoke to the nurse (nurse Roper) and informed him that I should try the muscle relaxer cream first before I fill out a sick call where I would be seen on 10-12-16 my medical staff. Around 7:20 and 7:25 p.m. Nurse Atwell brought me some analgesic balm, muscular pain reliever, and fifteen packs of non-aspirin. On 10-13-16, I declared a medical emergency to Lt. Tate before or a little after 7:00 p.m. After 8:00 p.m. Sgt. Burton and Nurse Mooney came into the wing and (I do not get along with nurse Mooney). I informed him what took place and that I was in severe pain in my neck and back area he told me that I can fill out a sick call and he walked off.

(Doc. No. 1 at 6-8).

b. **<u>Defendants' Summary Judgment Materials</u>**

In support of the summary judgment motion, Defendants have submitted the affidavits, with exhibits, of: (1) Defendant Rodney Burton, a correctional sergeant at Marion; (2) Defendant Ryan Robinson, a correctional officer at Marion; (3) Defendant Jonathan Mathes, a correctional

3

officer at Marion; (4) Wesley Ward, a registered nurse at Marion; and (5) Howard Tate, a correctional lieutenant at Marion. Attached to the affidavits are the North Carolina Department of Public Safety, Policy & Procedures regarding operational searches and use of force, Marion CI, standard operating procedures regarding operational searches and use of force, Plaintiff's Offender Information Screen, a summary of Plaintiff's disciplinary record, use of force incident reports, including witness statements, Plaintiff's Offense and Disciplinary Report, two statements of Wesley Ward, and a clinical encounter record. (Doc. No. 90-2, & Exs. A-H; Doc. No. 90-14, Exs. E-G).

Defendants note that, beginning in September 2010, Plaintiff received dozens of disciplinary infractions for disobeying orders, threatening to harm/injure staff, assault with a weapon, sexual act, and other offenses and had been brought to the restrictive housing unit on dozens of occasions. (Id. at ¶¶ 12, 13 & Ex. E). On October 9, 2016, Burton was employed as a correctional sergeant at Marion. (Doc. No. 90-11 at ¶ 4: Burton Aff.). Robinson, Mathes, and Rhodes were employed as correctional officers at Marion. (Doc. No. 90-12: Robinson Aff.; Doc. No. 90-13 at ¶ 4: Mathes Aff.; Doc. No. 90-11 at ¶ 25). Also on October 9, 2016, Ward was employed as a Registered Nurse at Marion. (Doc. No. 90-14 at ¶ 7: Ward Aff.). On this date, Tate was employed as a correctional lieutenant at Marion. (Doc. No. 90-2 at ¶ 4).

On October 9, 2016, at around 9:13 p.m., Burton was the sergeant assigned to the restrictive housing unit at Marion. (Doc. No. 90-11 at ¶ 11). Burton states in his affidavit that, around that time, he ordered Plaintiff to submit to a complete search, in accordance with policy and procedures and standard operating procedures regarding operational searches ("operational searches P & P and SOP"). (Id. at ¶ 12). Plaintiff refused to submit to the search, cursed at Burton, and spit on him. (Id. at ¶¶ 13-15). In response, Burton applied two short bursts of

4

pepper spray. (Id. at ¶ 16). Burton then ordered another officer to retrieve a shield to be placed over the door to block Plaintiff's efforts to continue spitting towards Burton and other officers. (Id. at ¶ 17). After the exposure to pepper spray, Plaintiff was allowed to decontaminate in the shower.[2] (Id. at ¶ 21).

Plaintiff remained in the shower area for an extended time period and then continued to refuse lawful orders to submit to restraints and exit the shower area. (Id. at ¶ 24). Burton ordered correctional officers Rhodes, Robinson, and Mathes to enter the shower with a protective shield, restrain Plaintiff, and remove him from the shower back to his cell. (Id.). Burton observed these correctional officers enter the shower, gain control of Plaintiff, and place him in full restraints. (Id. at ¶ 25).

Robinson states in his own affidavit that he witnessed Plaintiff's refusal to submit to the complete search ordered by Burton, Plaintiff's assault of Burton, and Burton's use of pepper spray. (Doc. No. 90-12 at ¶¶ 12-15). Robinson also witnessed Plaintiff's continued attempts to spit and his continued refusal to submit to wrist restraints. (Id. at ¶¶ 16, 19, 22). Robinson was provided a shield by another officer and was ordered to hold the shield in front of the shower door. (Id. at ¶ 18). Robinson asserts that Burton ordered Robinson, Rhodes, and Mathes to enter the shower with a protective shield, restrain Plaintiff, and remove him from the shower back to his cell. (Id. at ¶¶ 27-28). Robinson used the shield as he entered the shower area to secure Plaintiff and assisted in putting full restraints on him. (Id. at ¶¶ 29-31).

Mathes states in his own affidavit that he was aware that Plaintiff had refused direct

---

[2] Throughout their affidavits, Defendants assert that their actions were taken within and in accordance with policy and procedures and standard operating procedures regarding use of force ("use of force P & P and SOP").

5

lawful orders to submit to a complete search, that Plaintiff spat on Burton, and that Burton had deployed pepper spray. (Doc. No. 90-13 at ¶¶ 12-13). Mathes asserts that he was also aware that Plaintiff remained in the shower area after the exposure to pepper spray and continued to refuse lawful orders to submit to wrist restraints. (Id. at ¶ 14). Mathes asserts that Burton ordered Mathes, Rhodes, and Robinson to enter the shower with a protective shield, restrain Plaintiff, and remove him from the shower back to his cell. (Id. at ¶ 15). Rhodes and Robinson entered the shower area, secured Plaintiff, and assisted in placing full restraints on Plaintiff. (Id. at ¶¶ 16-17).

Burton, Robinson and Mathes assert that they did not hit or kick Plaintiff, slap him with the shield, or slam Plaintiff's head, or any other part of his body, against the wall, nor did they witness any other officers doing such things to Plaintiff. (Doc. No. 90-11 at ¶¶ 26-29; Doc. No. 90-12 at ¶¶ 32-35; Doc. No. 90-13 at ¶¶ 18-21). Burton, Robinson and Mathes assert that they did not apply any more force than necessary to restrain Plaintiff, gain control of him, and prevent injury to staff, nor did they witness any other officers applying any more than necessary force. (Doc. No. 90-11 at ¶¶ 30-31, 32; Doc. No. 90-12 at ¶¶ 36-38; Doc. No. 90-13 at ¶¶ 22-24).

Nurse Ward assessed Plaintiff after each use-of-force incident. (Doc. No. 90-14 at ¶¶ 16, 20: Ward Aff.). Ward first assessed Plaintiff after the exposure to pepper spray. During the assessment, Plaintiff stated that he did not want any medical treatment, and Nurse Ward noted no signs of trauma or distress. (Doc. No. 90-14 at ¶¶ 16, 18, Ex. E; Doc. No. 90-11 at ¶ 22; Doc. No. 90-12 at ¶ 24). After Plaintiff's removal from the shower area, Ward again medically assessed Plaintiff. (Doc. No. 90-11 at ¶ 37; Doc. No. 90-12 at ¶ 43; Doc. No. 90-13 at ¶ 29; Doc. No. 90-14 at ¶ 20, Ex. G). During the assessment, Ward noted no signs of recent trauma, and no additional injuries were noted. (Doc. No. 90-14 at ¶ 20, Ex. F, ¶ 22, Ex. G).

Finally, Marion correctional lieutenant Tate states in his affidavit that he investigated both incidents of force and concluded that excessive force was not used. (Doc. No. 90-2 at ¶¶ 7, 9-11, 14, 15, 22, 25, & 30). Furthermore, disciplinary action was applied against Plaintiff as to each incident. (Id. at ¶ 23, 31 Ex. H).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

7

irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

#### A. Plaintiff's Claim against Defendants in their Official Capacities

First, to the extent that Plaintiff has sued Defendants in their official capacities, a suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 n.55 (1978).

Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). North Carolina has not

waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983.  See generally Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina which had not been waived).  Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims against him in their official capacities.

**B.  Plaintiff's Claim Against Defendants in their Individual Capacities**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986).  To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind.  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Albers, 475 U.S. at 320-21.  Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim.  See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Applying the Whitley factors to the summary judgment evidence, the Court finds that Defendants are entitled to summary judgment.  The record evidence demonstrates that, given Plaintiff's earlier assault on staff, his continued non-compliance with verbal orders, and his repeated attempts to assault staff, the use of force on October 9, 2016, was appropriate,

reasonable, necessary, and in good faith to control and restrain Plaintiff and to achieve a correctional objective. (Doc. No. 90-11 at ¶¶ 12-14, 17, 20, 24, 34-35; Doc. No. 90-12 at ¶¶ 12-14, 19, 22, 26-28; Doc. No. 90-13 at ¶¶ 12, 17, 25-26). In other words, even viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Defendants had a sufficiently culpable state of mind because no evidence suggests that they acted "maliciously or sadistically for the purpose of causing harm." Whitley, 475 U.S. at 321-26, Wilkins, 559 U.S. at 37.

In sum, the incident report, witness statements, the reported findings or observations in Plaintiff's medical records, affidavits, and other documents in evidence simply do not support Plaintiff's allegations of "excessive" force.[3] Rather, the undisputed evidence shows that Defendants responded appropriately given Plaintiff's disruptive behavior, and his refusal to comply with orders. Prison staff are permitted to apply reasonable and necessary force when inmates fail to obey proper orders. See Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009); Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992).

Finally, and significantly, the medical evidence revealed no signs of physical injuries when Plaintiff was evaluated by medical staff. (Doc. No. 90-14 at ¶ 22, Ex. G). The medical record shows only a subjective complaint of upper back pain. (Doc. No. 90-14, Ex. F). No additional injuries were noted. (Doc. No. 90-14, Ex. F). Although minimal injury is not dispositive in an excessive force claim, the Court may consider it as a factor in assessing whether

---

[3] Defendants submitted video footage of Plaintiff being pulled from the shower by the officers and taken back to his cell. That videotape footage shows no force being used as described by Plaintiff—it merely shows the officers placing Plaintiff on the ground and patting him down before standing him back up to walk him to his cell. There is no videotape footage showing the alleged events in the shower. In any event, the summary judgment evidence simply does not support Plaintiff's version of events, particularly since no visible injuries were noted after the alleged excessive force incident.

10

excessive force was used.  See Wilkins, 559 U.S. at 38.

In sum, for all these reasons, summary judgment is granted to Defendants as to Plaintiff's excessive force claim.

### IV. CONCLUSION

In sum, Defendants are entitled to summary judgment.[4]

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 89), is **GRANTED**.

2. This action is dismissed with prejudice.

3. The Clerk is directed to terminate this action.

Signed: January 23, 2019

Frank D. Whitney
Chief United States District Judge

---

[4] Defendants also raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendants are entitled to qualified immunity.